421-0666-WC, Elsie Lambright, Appleby v. Brent Holmes v. Illinois Workers' Compensation Comm'n, Adlee V. Miller, Appellant v. Sandra Loeb. Ms. Loeb, you may proceed. Good morning, Your Honors. May it please the Court, my name is Sandra Loeb and I represent Adlee Miller, the injured employee. This case is unique in that it presents no dispute that Adlee sustained compensable injuries under the Workers' Compensation Act while employed for an uninsured employer known as Lambright Distributors. The issues before this Court are limited to two. The first issue is for the Court to decide if the Commission correctly determined that Elsie Lambright was responsible for paying the Commission's award. And the second issue is if the Commission correctly determined that the custodian of the Injured Workers' Benefit Fund is secondarily liable to pay the award if either one of two things happens. The first would be if Elsie is found responsible to pay the award and does not pay it. And the second circumstance where the IWBF would be secondarily liable is if the Court finds that Elsie is not responsible to pay the award but that it should have been paid by the uninsured employer. Turning to the first issue, the Commission correctly determined that Elsie Lambright was responsible for paying the Workers' Compensation benefits that are due to Mr. Miller because the Commission correctly applied the principles of contract law in order to find that the contract or the payment contract that was signed by Elsie on July 28, 2017 was dispositive of the employment relationship with Adly at the time. The Circuit Court had a big problem with that. Aside from the fact that it could be argued to be ambiguous, the Commission did seize on that as a primary reason for finding Elsie liable. But as the Circuit Court pointed out, that was contradicted by the greater weight of the testimony. First of all, was there not by Elsie that she signed it under duress? She specifically says she signed it only because she was pressured to settle the claim with the Department, that they were threatening to fine her $500 a day if she didn't sign it, she would have put out of business. She also pointed out that she signed it under the reservation of rights that was clearly specified in the payment contract. And then she went on to testify that she had no ownership interest whatsoever in the business. It was her husband's up until the time that he died. He had the testimony of her son who stated the same thing. And then in cross-examination, the claimant himself said he worked for Vernon, that Lambright Distributors was Vernon's business, and that Vernon was the sole owner of Lambright Distributors. Is that not true? Well, that was testimony, but the Commission is the ultimate decider of fact. The issue of employment relationship is an issue of fact. As long as there's some evidence to support the Commission's decision, this court should uphold the trier of facts decision on that issue. Okay, so let me ask you a point of question then. I understand your position. Other than the payment contract, can you point us to any evidence, affirmative evidence establishing that Elsie had an ownership interest in the company when Vernon died? Aside from the payment contract. Right. Well, Elsie is relying on the fact that she has somehow proven that Vernon was operating a sole proprietorship, and I don't think that's the case at all. I think the evidence supports that the business ran exactly as it ran before the death of Vernon Lambright, that she had the same actual position where she basically does nothing except for participate in some occasional bookkeeping activity. I don't think it should be assumed that the testimony that, or the self-serving testimony that was offered by the Lambrights is conclusive in the matter. I think there is evidence that Elsie participated in the business prior to the accident. Assuming you're correct and she did, she did some bookkeeping, she did some work on behalf of the business, does that mean that she has an ownership interest in the business for purposes of the applicability of the workers' compensation law? Well, I think her role is exactly the same now when she agrees that she's the owner as it was prior to the change in the actual business structure. So how do we even get to that? The threshold question would be, this is a sole proprietorship, Vernon was the owner of the business, he dies. You can't maintain an action against a deceased person who ran a sole proprietorship, can you? Well, the act doesn't specify one way or the other. The act specifies that I need to establish a employer-employee relationship. And the commission conclusively determined that we did, that he was employed by Lambright distributors at the time of his injury. There's no mention of their needing to be a company with legal status. And thinking about that, I can't think of how many claims I must have brought against employers that didn't have legal status because the corporation dissolved. I just have been fortunate in other cases that they actually had insurance that covered the event. No, I understand. But isn't that different than a deceased person? In this case, you named Vernon individually as a respondent in the application after he died. Do you have any authority that a deceased person can be sued in such a capacity? No, I do not. So the proprietorship is gone. He's dead. My inquiry was, when you knew Vernon was dead, why didn't you open up an estate and name the estate as the respondent? Well, I believe that the contract led the attorney that was handling the case to believe that Elsie admitted that or stood in the shoes of the owner of the business when she entered into that payment contract. And so she was the proper party defendant at the time. If he was somehow mistaken about that, I believe the matter should be remanded back to the commission for determination as to who the proper payor is. What good will that do you? We know that Vernon was uninsured. And in order to get liability against the treasurer, by reason of Vernon, you would have had to have a final decision of the commission within one year. We don't have a final decision. It's long since gone. At this point, we don't have a final decision from the commission because the commission determined that Elsie was the liable party to pay. And that matter has been brought up before you. And until you rule on that, who the responsible party is, the decision can't be final. At the moment, there is no final order that could be used against the fund, correct? Because it's not an appeal. It hasn't been determined. Correct. Absolutely. I think we should turn to the fund at this point. The fund is, you know, as we know, the fund is governed by Section 4D of the statute. And all Section 4D requires is that it is a showing that the employer was uninsured at the time of the injury. We have done that. That allows us, according to the statute, to add the fund. There's no language in the statute that requires the employer to have legal status or sufficient legal status to have a judgment entered against them. Because as I've said before, if that were the case, we would never be able to unless we are all charged with the obligation of chasing down owners of these businesses. As we know, that's not a feat. And that's not what the act is meant to accomplish. The act is meant to compensate individuals for injuries whenever possible. It's a liberal act that should be construed in favor of the injured employee. And when there's no language precluding the fund from being joined in this case, due to the fact that the injured employee was clearly injured in the course of his employment with an uninsured employer. With all due respect, your position seems to be contradictory. I thought you had acknowledged that the fund cannot be held liable in the absence of an award, final award, which you've conceded hasn't happened. So how does the fund come into this? There is no final award. When you remanded back to the commission to enter the final award, the commission did enter a decision. Who would the commission enter that award against? Lambright Distributors was an uninsured. Lambright Distributors is sole proprietorship. And so would they enter that award against a dead man? I think you would go back to my other question. Why didn't somebody open up an estate and name the estate as the respondent? Right. I think that there was confusion as to who the the injured employee did not know who the owner of the business was. The fact that Vernon Lambright's name appeared on his paycheck stub does not conclusively determine that he was a sole proprietor at the time of the injury. Who would have been the most obvious person in light of what the claimant, the client himself said? Vernon was the owner. He signed everything. Also, he didn't sign any documents. Basically, the claimant himself was telling everybody that Vernon, who was then the owner of the business. Wasn't that more than a strong clue that Vernon should have been joined? I don't think that was the petitioner's testimony at the time of trial. He said he didn't know. He said he didn't know more than once. He assumed that both of them had ownership interests. I believe you said on cross-examination by Holmes, who was the attorney for the other side, correct? Correct. Claimant agreed that he worked for Vernon. That Lambright Distributors was Vernon's business and that Vernon was the sole owner of Lambright's Distributors. That's his testimony under oath. Wouldn't that put somebody on notice that Vernon was the owner of the sole proprietorship? I don't think his testimony was conclusive on direct. He said he wasn't sure. He thought that they both, his husband and wife, it's a reasonable conclusion. They're both on the same property. Owning the same equipment that is used in this business. I mean, in all candor, there's some unfortunate aspects of this case. The injured worker was seriously injured. But are we being asked, is it our role to fill in the gaps in the evidence in this case and fill in these gaps in the law and the procedure? That's what we're being asked to do here. I don't think there are any gaps. You're here to decide whether or not Elsie Lambright had an ownership interest. And if you decide that the answer is no, why was the injured worker's benefit fund dismissed from the claim? There's no legal basis to do that. Because there was no final order. Wouldn't the final order be entered after it's determined whether, I mean, the commission determined that Elsie was responsible. Yes, but it was appealed, was it not? It was appealed, which means the order was not final. Until, and it's still being ruled upon at this point. Can I ask you a question? In the questioning of the injured worker during the arbitration hearing, he originally testified that he never worked for Elsie Harold or Traylor Refrigeration. Then he's questioned by the treasurer and he states that it was his understanding that Elsie owned Lambert Distributors. And then he goes under redirect examination by his own lawyer. And he was asked whether it was his understanding that he also worked for Elsie. And he responded, I did not know any different. I just thought she owned, they had it joint together, but I don't know. That's exactly the testimony I'm relying on. He did not. Exactly right. And if he doesn't know, if he doesn't know, then how does that form the basis of your argument that she did own based on his testimony? You can't base testimony on someone who says he doesn't know the issue. Right. But it's not, it hasn't been conclusively determined that Vernon was the sole owner. Why? The W-2 form said Vernon's name on it. Vernon. And then it said also Lambert Distributors. Elsie denied she owned anything. Harold said she didn't own anything. And that's, that's where the new business after he died, where's the evidence that she did? Just a payment contract where she reserved the right to raise any defenses that she had? Right. But every settlement contract I've ever seen indicates that the defendant is not admitting any liability, that they are reserving their actual legal defenses. In this case, the settlement contract doesn't make sense. She's not, she asserts that she's an owner and an employer along with her deceased husband in that settlement contract. And that settlement contract includes a promise to pay benefits due and owing to injured workers who are injured petitioners who sustained injury during the period of non-compliance. Those provisions can't make sense with, along with a provision that the contractor that Elsie is denying her status as employer. And yet they do make sense because you have something in this case you don't have in other cases that you alluded to. She was under duress as a trial court file. She signed this to settle a separate issue. She signed it because she feared she'd be out of business completely if she didn't sign it. Wasn't that her testimony? I think she answered yes to a cross-examination question. I don't think she actually testified to those facts from herself. I think she answered and I don't think that could be that maybe the commission indicated that her testimony was not believable. The red light is on. So you will have time in reply. Thank you. Mr. Holmes, you may respond. Thank you. May it please the court and counsel. My name is Brent Holmes and I represent Elsie Lambright. I think it is telling that in Adlai Miller's opening brief and in his reply brief, he did not cite to any witness testimony at all. This is not an oversight because there was no witness testimony to support the claim that Elsie Lambright was his employer. It is also noteworthy that nowhere in Mr. Miller's brief or his reply brief does he cite Vernon versus Schuster. That is no accident. That is the controlling precedent by the Illinois Supreme Court. The circuit court in this case engaged in a very thorough review of the record and issued a very reasoned decision in his 62-page order. I want to come back to Vernon versus Schuster for a moment. In the commission decision, it barely acknowledged the existence of that Supreme Court decision. The arbitrator did not even mention it. Now, I think that one could infer that the commission does not agree with the holding in Vernon versus Schuster. They certainly, in this case, declined to follow it. The courts of this state are duty bound to controlling precedent of the Illinois Supreme Court. Likewise, the administrative bodies of this state, including the Workers' Compensation Commission, are required to follow the controlling precedent of the Illinois Supreme Court. Yeah, but Vernon versus Schuster would only apply to the argument that their successor liability. In this particular case, your opponent's co-owner. She was an owner. Vernon wasn't the sole owner. That's what the argument is. So, the question is, is there any evidence to support the notion that she was a sole owner? Absolutely not. She was a co-owner. Pardon me. Yeah, there's not a scintilla of evidence to support the bald claim that she was a co-owner or a partner in Lambright Distributors, the business that her husband owned as a sole proprietor and operated. The arbitrator invented an entity out of whole cloth, which she called Elsie Lambright & Company. There's nothing to support that. I think maybe she was attempting to create some kind of a fifth exception to non-liability of the Schuster case. And in 2020, the Illinois Supreme Court in the appellate court to attempt to establish or invent a fifth exception. And in that 2020 decision, the Illinois Supreme Court emphasized its holding in Vernon versus Schuster, the 1997 case, that it was still good law 23 years later. Here's the bottom line. Adlai's claim was a pseudonym, Lambright Distributors. Three-year statute of limitations ran on June 29 of 2015. Apparently, belatedly realizing their mistake, on February 6, 2018, they filed an amended application naming Vernon Lambright, who's deceased and has been deceased for two and a half years. There's never been any estate opened. They never filed a petition in certain court to request the liability against a deceased person expires two years after the date of death. Then they decided to try to lay the liability off on Harold Lambright, the 16-year-old boy, the son of the deceased. And they filed that on July 19 of 2018. Then later after that, they decided to try to lay liability off on the Amish widow, Elsie Lambright. They filed that on November 15 of 2018, over six years after the date of the injury. A very simple investigation by the attorney when Vernon came in, or I'm sorry, when Adlai came in to talk about his injury would have been to ask Adlai, who is your employer? It's pretty clear from the testimony six years later, or even longer than that, the arbitrationary, it was Vernon Lambright was his employer. Could have looked at his paystubs. Paystubs said very clearly, Vernon Lambright, Lambright Distributors. Could have looked at his W-2 at the end of 2012. Same thing. So we believe that this court should affirm the circuit court and end this nightmare for Elsie. I'd like to cut. Can I ask a question of procedure before the commission? Because I'm a little unclear on this. How do you get to file amended applications for adjustment of claim before the commission? Don't you have to ask leave to file it? I believe that the procedure is you just file an amended complaint and send out a copy to whoever you're putting on the claim. Very, very interesting process. Because the commission's rules, as I understand it, says it's within the discretion of the commission to allow an amendment to an application. I think it's 9020.20, the administrative code. All right. And I think that is- So if it's within the discretion, it occurs to me you got to ask permission. One would assume so, and it doesn't appear from this record that there was any permission sought. They just filed these. We ended up with, what, a fourth amended claim, some six and a half, almost six and a half years after the injury. And this, turning now to this PX31, the payment contract with the state of Illinois, both attorneys, the Attorney General, Assistant Attorney General and Mr. Miller's attorney, both admitted at arbitration that that was not an admission. But yet the arbitrator admitted the exhibit. We've pointed out in the Sleep v. Butler Brothers case and the Delude v. Reimig case that a settlement with a third party is not admissible in a separate proceeding. It's certainly- Adlai was not a part of that case. It was for her to be able to stay in business. The full weight of the state of Illinois was bearing down upon her with threats that they could issue a cease and desist order, closing her business, fining her hundreds of dollars a day. And so sometimes you have to pick your battle. And so she chose to say, okay, I'm going to pay a fine to the state of Illinois, but in the payment contract, we're going to put in there explicitly that we are not agreeing to pay any benefits to anyone that might come along or who might already be filing a claim. In paragraph two on page two, she reserved the right to assert all legal and factual defenses available to her under the act or otherwise. And then paragraph three even became more explicit because there was an Adlai Miller claim out there. She wasn't named in that case, but she made it darn clear that if she was ever dragged into that situation, she was reserving any and all defenses to any claim that somehow she should be responsible or liable for that injury. And so we have a situation where the arbitrator basically in the commission just ignored that there was a page two to that payment contract. It shouldn't have been admitted in the first place, but certainly you can't just say, well, because you signed a document, you're now liable. That is not the case. That would stand the law on its head as a matter of law under contract construction. She could not be found as having accepted any liability under any circumstance with regard to Mr. Miller's case. And in the reply brief, Mr. Miller cites to Korleski versus Needham, which is totally distinguishable. That was a case, a motor vehicle case in which a claim was brought against the driver of the vehicle and his employer under a respondeat superior claim. And in that case, the driver and the workers' compensation claim. And that document was admitted as evidence of the fact that the driver was in fact an employee. And anyone who has practiced in workers' compensation law or any judges who have ever reviewed this know that the settlement contract that's entered into between the employer and the employee to settle a workers' compensation claim clearly and explicitly states that the respondent, the employer agrees to the settlement, will pay the benefits to the petitioner or the petitioner's attorney according to the terms of the contract. Absolutely to the contrary, then, we have a payment contract with a third party, the state of Illinois. It doesn't involve Adline Miller. He's not a party to it. It could not under any circumstances be used or claimed as an admission. It would be like taking a settlement agreement with regard to a motor vehicle collision settlement. And on the first page, it says we agree to pay John Doe the sum of $100,000 to settle this pending claim, blah, blah, blah. And then we ignore pages two, three, and four of that settlement agreement when it says, and by the way, the defendant denies any and all liability and expressly asserts that this is a settlement of a disputed claim. And there's no, it's the same thing here. The Workers' Compensation Commission has pretended that page two didn't even exist. I'd like to now talk about in the reply brief, the council cites to section three of the act, says, well, there's automatically application of the act because he's a forklift operator. Well, that doesn't get her anywhere. Just because the act applies doesn't mean that you're entitled to any recovery. Just because you're injured while operating a forklift doesn't automatically entitle you to a recovery or a settlement. You have to file your case. You have to name a correct legal entity or person. You have to file within the statute of limitations. There's all kinds of requirements. The petitioner has the burden of proving. And then at the end of the reply brief, they're asking that this honorable court remand this to the commission for some, I can't really understand the purpose behind it. They indicate that, well, Vernon Lambright deceased and the commission should then enter an award against Vernon Lambright deceased. I would point out that the arbitrator and the commission never entered any award against Vernon Lambright deceased, nor could it have. That would be a nullity under Ralph versus Chadayevsky, the Illinois Supreme Court case, and Richards versus Vacca, the second district case from 2021. And so there was never any award made against Vernon Lambright deceased and no review filed by the petitioner claiming that, well, gee, we should have gotten an award against a deceased person. So that ship has sailed. There is no basis that this court can remand and tell the commission to search around and try to pick somebody to enter an award at this point. And I would point out that the IWBF was properly dismissed by the circuit court once the court reversed the award against Elsie Lambright. I would point out that the state has not even filed any brief in this case. State is not contesting the dismissal of IWBF from this case. And the Rutherford case we cite at page 33 clearly is precedent for the fact that when an award is reversed, the IWBF is properly dismissed as a party. So for those reasons, we request that this court will affirm the order entered by the circuit court of Douglas County. Thank you. Thank you, Mr. Holmes. Ms. Loeb, you may reply. Well, Mr. Holmes touched on a lot of different issues. If the court has specific questions, I welcome them. I would start out by saying that nowhere in the act is the petitioner required to name a legal entity. Rather, the petitioner is required to establish an employment relationship that his injury arose in the course of his employment and that the injury was caused by that event and so forth. Mr. Miller did that in this case. He clearly proved that he was injured in the course of his employment with Lambright Distributors. It does not matter to the act whether or not Lambright Distributors was a legal entity at the time. As I said before, I have certainly prosecuted many claims against corporations that have been since become defunct in some manner, but it just happens to be that that's never an issue raised when there was an insurance coverage in place at the time of the injury. To require claimants to chase down owners of businesses, figure out who owns a business after it's dissolved is just unduly burdensome and does not serve the purpose of the act. It certainly doesn't serve the purpose of Injured Workers Benefit Fund, which is to compensate employees who are injured while working for uninsured employers. The state did indicate in open court that it believed that it should not be dismissed from the case, that it has been left with the bag before and it has no issue with being left with the bag in this case in the event that Elsie Lambright is not found to be an owner or have ownership interest at the time of Adly's injury. Elsie's counsel started her argument with the bold assertion that Vernon versus Schuster controls in this case. Well, it only controls in this case if the defendant proved that Vernon Lambright was a sole proprietor and I don't believe the commission found that they did. The commission actually does cite to the language in the settlement contract or the payment contract indicating that Elsie did not accept responsibility or admit or did not accept liability for Adly's claim, but it declined to clearly indicate that both her and Vernon were owners at the time of Adly's injury and employers and there would be no reason for her to enter into that contract. The information that Mr. Holmes has given to you today about the duress that she was under, that's not in the record. There's one question where he asks her on cross-examination, were you threatened with fines and is that why you signed this? I don't have the exact language in front of me and she said yes. The commission chose not to believe that is the true reason she signed the contract. She obviously felt that there was some liability coming down the pipe and there was a reason for her to sign that agreement. There was a question by Justice Hoffman about how amendments to the application for adjustment happen. Rule 9020.20 indicates that applications may be amended prior to a hearing on the merits just by filing the amended application as was done in this case. There's no need for leave. The only time the discretion of the commission is required is after the hearing on the merits has began. I believe that this matter could be remanded back to the commission at this point with direction for them to enter the decision against Lambright Distributors. That was one of the respondents named in the case. There's no, as I said at the beginning of my rebuttal here, there's no prohibition in the act against finding an employer liable despite its legal status. For that reason, we ask you to affirm the decision of the commission. Any questions from the court? None? Okay. Thank you, Ms. Lowe. Mr. Holmes, for your arguments in this matter this morning.